Gudelia **BARRAGAN–SANCHEZ,**
**Petitioner,**

**v.**

George K. **ROSENBERG, District Director, Immigration and Naturalization Service, Respondent.**

**No. 71–3037.**

United States Court of Appeals, Ninth Circuit.

Dec. 26, 1972.

Emanuel Braude (argued), Otto F. Swanson, Los Angeles, Cal., for petitioner.

John L. Guth, Asst. U. S. Atty. (argued), Frederick M. Brosio, Jr., Asst. U. S. Atty., William D. Keller, U. S. Atty., Los Angeles, Cal., Henry E. Peterson, Asst. Atty. Gen., Washington, D. C., Joseph Surreck, Regional Counsel, I&NS, San Pedro, Cal., Stephen Suffin, Atty., I&NS, San Francisco, Cal., for respondent.

Before MERRILL and KILKENNY, Circuit Judges, and TAYLOR,* District Judge.

KILKENNY, Circuit Judge:

Petitioner seeks review of a final order of deportation issued against her pursuant to the provisions of 8 U.S.C. § 1251(a)(2).

## FACTS

Petitioner, a native and citizen of Mexico, initially entered the United States in California in November, 1963, as a non-immigrant. She was admitted for 72 hours only. Since that date she has remained in the United States continuously except for two departures to Mexico, one on February 2, 1968, and the other on April 3, 1970. Each departure followed apprehension by immigration service officials, who permitted petitioner to depart in lieu of deportation. After the first departure, petitioner returned to the United States within twenty-four hours and on the second departure returned within one week. On each of her entries after departure, she was inspected and admitted by the immigration officials upon her presentation of a border crossing identification card, which she possessed on departure. Petitioner claims that each of her departures were made with the intent of returning to the United States to resume her residence. Her thirteen year old daughter remained in the United States on the occasion of the second absence.

On March 17, 1971, an order to show cause and notice of a hearing was directed to petitioner by the Immigration and Naturalization service charging that she was subject to deportation pursuant to 8 U.S.C. § 1251(a)(2) in that, after admission as a non-immigrant under the Act, she had remained in the United States for longer than permitted. In the hearing on the order, the petitioner admitted her deportability under the charge, but applied for suspension of deportation pursuant to 8 U.S.C. § 1254(a)(1).[1] The Special Inquiry Offi-

---

* The Honorable Fred M. Taylor, Senior District Judge for the District of Idaho, sitting by designation.

1. 8 U.S.C. § 1254. *Suspension of deportation—Adjustment of status for permanent residence; contents*
   "(a) As hereinafter prescribed in this section, the Attorney General may, in his discretion, suspend deportation and adjust the status to that of an alien lawfully admitted for permanent residence, in the case of an alien who applies to the Attorney General for suspension of deportation and—
   (1) is deportable under any law of the United States except the provisions specified in paragraph (2) of this subsection;

cer denied the petitioner's application, finding her statutorily ineligible for failure to establish continuous physical presence in the United States for the required seven year period. Such conclusion was based on the Officer's finding that petitioner's departures in 1968 and 1970, in lieu of deportation proceedings, broke the continuity of her physical presence in the United States. On appeal to the Board of Immigration Appeals, the decision of the Officer was affirmed and the appeal dismissed.

## CONCLUSIONS

Although we sympathize with petitioner's unfortunate position, we are compelled to uphold the decision of the Special Inquiry Officer as affirmed by the Appeals Board. Unfortunately for petitioner, we do not act as a court of equity. Petitioner's reliance on Rosenberg v. Fleuti, 374 U.S. 449, 83 S.Ct. 1804, 10 L.Ed.2d 1000 (1963), is completely misplaced. First of all, the alien in *Fleuti* was admitted to this country for a permanent residence, rather than for a period of 72 hours. Next, *Fleuti* involved a *voluntary* departure for "about a couple of hours." In passing on the issue presented, the Supreme Court held that it would be inconsistent with the general purpose of Congress to hold that an innocent, casual and brief excursion by a *resident alien* outside the country's borders was "intended" as a departure disruptive of the aliens' resident alien status, so as to subject him to the consequences of an "entry" into the country on his return. *Fleuti* emphasizes that the term "continuous" is no more subject to a hard and fast construction than is the term "intended". Wadman v. I&NS, 329 F.2d 812, 816 (CA9, 1964).

Here, we are concerned with the meaning of the word "continuous", as

has been *physically present in the United States for a continuous period of not less than seven years immediately preceding the date of such application,* and proves that during all of such period he was and is a person of good moral character; and is a person whose deportation would, in

used in 8 U.S.C. § 1254(a)(1). One of the guidelines emphasized in *Fleuti* is "The purpose of the visit . . . ." It is there said, ". . . for if the purpose of leaving the country is to accomplish some object which is itself contrary to some policy reflected in our immigration laws, it would appear that the interruption of residence thereby occurring would probably be regarded as meaningful." *Fleuti, supra,* 374 U.S. p. 462, 83 S.Ct. p. 1812. This guideline was recognized and utilized by us in Toon-Ming Wong v. I&NS, 363 F.2d 234, 235 (CA 9, 1966). There, in speaking on the subject, we said: "On the other hand, a very brief absence might suffice if voluntary and accompanied by a realization of possible consequences to the alien's status as a United States resident, *particularly if the journey abroad were motivated by a purpose inconsistent with the policies of the Act.*" p. 236. (Emphasis supplied.)

Petitioner's departures, although termed "voluntary", were in fact coerced by threats of deportation. For the time being, in each instance, she accepted the lesser of two evils. In no way can petitioner's coerced departures be equated to the voluntary actions before the court in *Fleuti* and other such cases. For that matter, it is crystal clear that the alleged *voluntary* departures were the result of an implied agreement that petitioner would not return. Otherwise, there would be no reason behind the procedure of voluntary departures in lieu of deportation proceedings. The fact that the officials did not seize petitioner's border crossing card, which permitted her to reenter forthwith, is of no significance.

In the final analysis, the question posed is "Whether the interruption, viewed in balance with its consequences,

the opinion of the Attorney General, result in extreme hardship to the alien or to his spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence . . . ." (Emphasis supplied.)

can be said to have been a significant one under the guides laid down in *Fleuti." Wadman, supra,* 329 F.2d p. 816. We answer in the affirmative.

Judgment affirmed.