James McCOLVIN, Petitioner,

v.

IMMIGRATION AND NATURALIZA-
TION SERVICE, Respondent.

No. 80–1463.

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 5, 1981.

Decided May 8, 1981.

---

* Honorable G. Ross Anderson, Jr., United States District Judge for the District of Maryland,    sitting by designation.

**936**

David Goren, Washington, D. C. (Goren & Maggio, Washington, D. C., on brief), for petitioner.

Daniel E. Fromstein, Crim. Div., Dept. of Justice, Washington, D. C. (James P. Morris, General Litigation and Legal Advice Section, Crim. Div., Washington, D. C., on brief), for respondent.

Before BRYAN, Senior Circuit Judge, and PHILLIPS and ERVIN, Circuit Judges.

JAMES DICKSON PHILLIPS, Circuit Judge:

In this case petitioner James McColvin seeks review of the decision of the Board of Immigration Appeals (BIA) that he is ineligible for suspension of deportation. We find that petitioner's departure from the United States under threat of deportation constituted a break in the continuity of his physical presence in the United States that is a condition of suspension of deportation under 8 U.S.C. § 1254(a)(1). We therefore affirm the BIA's entry of a final order of deportation against petitioner.

Petitioner is a citizen of Canada who entered the United States on August 30, 1972 as a nonimmigrant visitor for pleasure under 8 U.S.C. § 1101(a)(15)(B). When petitioner subsequently enrolled in an electronics school, the Immigration and Naturalization Service (INS) granted him the privilege of nonimmigrant student status and allowed him to remain in the United States until December 30, 1974. His application for any further extension of his stay in this country, however, was denied, and the INS first instituted proceedings for his deportation in March 1975.

In June 1975, petitioner applied to adjust his status to that of a permanent resident, based upon his establishment of and investment in a television repair business. Over a year later the INS denied petitioner's application for permanent residency, and the deportation proceedings against him were reinstituted. Following a delay of almost two years, an immigration judge found that petitioner should be deported for staying in the United States a longer time than permitted. Petitioner was granted the privilege of voluntary departure on or before November 8, 1978, however, on the condition that, "if the petitioner fail[ed] to depart when and as required, the privilege of voluntary departure [would] be withdrawn without further notice or proceedings" and petitioner would be deported.

Although petitioner had informed the INS of his address on several occasions, the INS sent notice of the judge's decision to an incorrect address. Upon delayed receipt of that notice, petitioner departed the United States on March 1, 1979, when he flew from Philadelphia to Toronto, Canada. The next day, however, he reentered the United States as a nonimmigrant visitor for business authorized to remain in this country for a period not to exceed six months under 8 U.S.C. § 1101(a)(15)(B).

On April 26, 1979, petitioner was issued an order to show cause why he should not be deported on the allegation that he was employed in his television repair business without INS permission in violation of the conditions of the nonimmigrant status under which he had reentered the United States. At a hearing held on November 26, 1979, an immigration judge found that the petitioner was "working" without INS permission and was, therefore, deportable.

Petitioner then applied for relief from deportation under 8 U.S.C. § 1254(a)(1), which permits the Attorney General, in his discretion, to suspend deportation and adjust the status of an alien if he "has been physically present in the United States for a continuous period of not less than seven years immediately preceding the date" of application for suspension of deportation, he proves that he is a person of good moral character, and the Attorney General is of the opinion that his deportation would result in extreme hardship to him or his family. The immigration judge held that petitioner's single day out of the United States broke his continuity of presence in the country and that his deportation would not amount to an extreme hardship. On appeal, the BIA affirmed the holding of the immigration judge. Thus, we are confronted with the question whether petitioner's departure from the United States on March 1, 1979 under a grant of voluntary departure in lieu of deportation broke the continuity of his physical presence in the United States that is a prerequisite to relief from deportation under 8 U.S.C. § 1254(a)(1).

On its face, 8 U.S.C. § 1254(a)(1) contains no exception to the requirement of seven years of "continuous physical presence" in the United States to be eligible for suspension of deportation. Moreover, the Supreme Court, in *Jay v. Boyd*, 351 U.S. 345, 357, 76 S.Ct. 919, 926, 100 L.Ed. 1242 (1956), rejected the suggestion that it should resolve all doubts in the applicant's favor in construing the suspension of deportation statute and stated that "we must adopt the plain meaning of a statute, however severe the consequences." Nevertheless, in *Rosenberg v. Fleuti*, 374 U.S. 449, 452–62, 83 S.Ct. 1804, 1806–12, 10 L.Ed.2d 1000 (1963), the Court, in construing the exception to the entry doctrine for unintended departures by resident aliens under 8 U.S.C. § 1101(a)(13) held that the word "intended" in that statute should not be applied inflexibly. The *Fleuti* court therefore vacated the finding that a resident alien's "innocent, casual and brief excursion" into Mexico for an afternoon had been "intended" as a departure. Lower courts have since treated the word "continuous" as no more subject to a hard and fast construction than the word "intended," see, e. g., *Wadman v. INS*, 329 F.2d 812, 816 (9th Cir. 1964), and *Fleuti* has therefore been regarded as applicable in suspension of deportation cases turning upon the continuous physical presence requirement, see, e. g., *Toon-Ming Wong v. INS*, 363 F.2d 234 (9th Cir. 1966).

The parties in the present case agree that the continuous physical presence requirement may be relaxed in an appropriate case. They differ, however, on the degree of relaxation that should be allowed and on whether this case is an appropriate one for such relaxation. Petitioner relies almost exclusively on the Ninth Circuit's recent decision in *Kamheangpatiyooth v. INS*, 597 F.2d 1253 (9th Cir. 1979). In analyzing the thirty-day absence of an alien that was raised in that case, the court stated that "[a]n absence cannot be significant or meaningfully interruptive of the whole period if indications are that the hardship of deportation to the alien would be equally severe had the absence not occurred, and that no significant increase in the likelihood of deportation could reasonably have been expected to flow from the manner and circumstances surrounding the absence." *Id.* at 1257.

The INS, on the other hand, contends that *Kamheangpatiyooth* was simply wrongly decided because it is in keeping with neither the slight relaxation of immigration standards permitted in *Fleuti* nor the restrictive manner in which Congress intended the continuous physical presence standard to be applied. In construing the "intended" exception in 8 U.S.C.

§ 1101(a)(13), the *Fleuti* Court concluded that that exception should be treated "as meaning an intent to depart in a manner which can be regarded as meaningfully interruptive of the alien's permanent residence." *Rosenberg v. Fleuti*, 374 U.S. at 462, 83 S.Ct. at 1812. The three factors that the court found to be relevant in making this inquiry were the length of time the alien was absent, the purpose of the absence and whether the alien had to procure travel documents in order to take his trip. *Id.* The criteria laid down in *Kamheangpatiyooth* clearly gave rise to a broader interpretation of "continuous" than the *Fleuti* Court gave to "intended."

■ We think it is clear that Congress intended that the "continuous physical presence" requirement of 8 U.S.C. § 1254(a)(1) be applied in a rigorous manner. The predecessor to this provision, § 19(c) of the Immigration Act of 1917, 39 Stat. 874, required only that an alien have "resided continuously" in the United States for seven years or more and that deportation would result in "serious economic detriment." In its 1950 review and analysis of the nation's immigration laws, *see* S.Rep.No.1515, 80th Cong., 1st Sess. (1950), Congress noted the criticism of the interpretations that had been given to the serious economic detriment and seven-year residence requirements. For example, a congressional subcommittee reported that INS field officers had complained regarding "the administrative interpretation of the 7-year residence provisions of the laws. These provisions have been held applicable to an alien who has a total of seven years' residence in the United States, although the alien has been out of the United States for as long as two years during the last 7 years . . . ." *Id.* at 602.

In "an attempt to discontinue lax practices and discourage abuses," H.R.Rep.No. 1365, 82d Cong., 2d Sess. 31 (1952), U.S.Code Cong. & Admin.News 1952, pp. 1653, 1682, Congress amended the suspension of deportation statute to require seven years' "continuous physical presence" in the United States and a showing of "exceptional and extremely unusual hardship." Although the latter requirement was subsequently amended, in response to criticism that it was unduly harsh, to require only "extreme hardship," Act of October 24, 1962, 76 Stat. 1247, the "physical presence" requirement has remained unchanged. It is therefore apparent that Congress intended for the "continuous physical presence" requirement to be applied strictly to exclude "aliens [who] are deliberately flouting our immigration laws by the processes of gaining admission into the United States illegally or ostensibly as nonimmigrants but with the intention of establishing themselves in a situation in which they may subsequently have access to some administrative remedy to adjust their status to that of permanent residents." S.Rep. 1137, 82d Cong., 2d Sess. 25 (1952). The INS contends that *Kamheangpatiyooth* is not in keeping with the rigorous construction of the suspension of deportation statute desired by Congress and should not be followed by this court.

■ We need neither approve nor reject the reasoning of that case to decide this one. Even if the concededly liberal reading of the suspension of deportation statute of the *Kamheangpatiyooth* court is applied in the present case petitioner would not be entitled to relief. Petitioner argues that, because the *Kamheangpatiyooth* court found that an alien's thirty-day absence from the United States was not "meaningfully interruptive" of his continuous physical presence in this country, petitioner's one-day absence clearly cannot be regarded as such. This approach is far too simplistic.

In commenting on the requirement of seven years continuous physical presence, the *Kamheangpatiyooth* court noted:

> It was Congress' judgment that presence of that length was likely to give rise to a sufficient commitment to this society through establishment of plans and expectations for the future to justify an examination by the Attorney General of the circumstances of the particular case to determine whether deportation would be unduly harsh. . . . The Board must determine whether a particular absence

during the seven-year period reduced the significance of the whole period as reflective of the hardship and unexpectedness of expulsion.

*Kamheangpatiyooth v. INS,* 597 F.2d at 1256. In the present case, however, any roots that petitioner had established in the United States were put down with the knowledge that his stay in this country was temporary, and, therefore, any plans or expectations for the future that he might have developed could not have been legitimate ones.

In addition, the *Kamheangpatiyooth* court looked to whether a "significant increase in the likelihood of deportation could reasonably have been expected to flow from the manner and circumstances surrounding the absence." *Id.* at 1257. Unlike the alien in *Kamheangpatiyooth,* who left the country to spend Christmas with his gravely ill mother, *id.* at 1255, petitioner left this country with the knowledge that, if he did not depart voluntarily, he would be deported. If he left with the intention of returning, that intention was disingenuous.

Petitioner attempts to obscure this issue by arguing about whether he left the country under a "final deportation order." The INS apparently felt compelled to respond to this argument because the BIA affirmed the immigration judge on finding that petitioner had broken his continuity of presence by leaving the country under a final deportation order. The BIA has clearly distinguished between a voluntary grant of departure, such as the one under which petitioner left the country, and a final order of deportation. *See, e. g., Matter of Benitex-Saenz,* 12 I & N Dec. 593 (BIA 1967). On the other hand, the courts have recognized that grants of voluntary departure in lieu of deportation are "in fact coerced by threats of deportation," and departure under such a grant is, therefore, "meaningfully interruptive" of an alien's "continuous physical presence" in the United States. *Barragan-Sanchez v. Rosenberg,* 471 F.2d 758, 760 (9th Cir. 1972). Therefore, while petitioner's grant of voluntary departure in lieu of deportation was not a "final order of deportation," his one-day departure from the country under that grant must be regarded as "meaningfully interruptive" of his continuous physical presence in the United States. Accordingly, we affirm the order of the BIA and dissolve the statutory stay of deportation to which the petitioner became entitled upon the filing of his petition for review.

AFFIRMED.