**Paula Myrtle Marie DILL, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE and Executive Office of Immigration Review, Board of Immigration Appeals, Respondents.**

No. 84–3339.

United States Court of Appeals, Third Circuit.

Argued Jan. 16, 1985.

Decided Sept. 4, 1985.

Lawrence H. Rudnick (argued), Orlow, Fuller, Rubin & Steel, Philadelphia, Pa., for petitioner.

Alexander Ewing, Jr., Asst. U.S. Atty., Philadelphia, Pa., Lauri Steven Filppu, Mark C. Walters (argued), Office of Immigration Litigation, Dept. of Justice, Richard K. Willard, Acting Asst. Atty. Gen., Dept. of Justice, Washington, D.C., for respondents.

Before ADAMS and WEIS, Circuit

Judges, and POLLAK, District Judge.*

## OPINION OF THE COURT

LOUIS H. POLLAK, District Judge.

The Immigration and Nationality Act vests in the Attorney General broad discretion to suspend deportation of an alien who has been ordered deported, provided the alien establishes (1) good moral character, (2) seven years' continuous physical presence in the United States, and (3) "extreme hardship" to the alien, or, in the alternative, to the alien's "spouse, parent, or child," if that close family member is a citizen or lawful permanent resident of the United States. 8 U.S.C. § 1254(a)(1). Exercise of this discretionary authority has been delegated by the Attorney General to certain officials of the Immigration and Naturalization Service—namely, immigration judges and the Board of Immigration Appeals. An alien whose motion for suspension of deportation is turned down by the Board of Immigration Appeals may seek review in the appropriate court of appeals; but, as the Supreme Court has had recent occasions to make plain, Board decisions denying suspension of deportation are not to be lightly overturned. See *INS v. Rios-Pineda,* —— U.S. ——, 105 S.Ct. 2098, 85 L.Ed.2d 452 (1985); *INS v. Phinpathya,* 464 U.S. 183, 104 S.Ct. 584, 78 L.Ed.2d 401 (1984).

Petitioner Paula Dill, a twenty-year-old native of Bermuda, entered the United States on a student visa in 1975. In the same year, petitioner's uncle and aunt, Ellison and Myrtle Dill, who have raised petitioner since she was an infant, also came to the United States; two years later, Reverend and Mrs. Dill became permanent residents. In May of 1976, petitioner, having overstayed her student visa, was found deportable. Permitted by the INS to depart voluntarily, petitioner left the United States in July of 1976 and, in August, was readmitted to the United States under a new student visa authorizing her to remain

for two years. Petitioner has resided in the United States since August of 1976. In January 1982, more than three years after the lapse of the visa issued in 1976, Ms. Dill was again found deportable, and the INS again permitted her to depart voluntarily. She neither contested this finding nor sought suspension of deportation; rather, she relied on the efforts of Reverend and Mrs. Dill to obtain her admission as the "child" of lawful permanent resident aliens. *See* 8 U.S.C. § 1151(b). Those efforts were unsuccessful because Ms. Dill, never having been formally adopted by her uncle and aunt, did not qualify as their "child" within the meaning of the statute. *Id.* Ms. Dill did not depart within the time allotted her by the immigration judge, and the INS directed her to report for deportation on September 14, 1982.

The day before she was to report, she moved to reopen her deportation proceeding, *see* 8 C.F.R. § 3.2, and sought suspension of deportation. Her motion to reopen was denied by an immigration judge on the ground that seven years had not elapsed since her August 1976 return to the United States. She appealed this decision to the Board of Immigration Appeals, and requested a stay of deportation pending the resolution of her appeal. The request for a stay was denied and petitioner was again ordered to report for deportation on November 3, 1982. Ms. Dill petitioned this Court to review the Board's denial of her request for a stay, thereby automatically staying deportation pending this Court's ruling. *See* 8 U.S.C. § 1105a(a)(3). Before any decision issued, the Board affirmed the immigration judge's denial of petitioner's motion to reopen. Petitioner then sought review in this Court of the Board's new order and moved to consolidate her two appeals.

In September of 1983, 722 F.2d 731 (3rd Cir.1983), this Court directed that the matter be remanded to the Board in view of the fact that seven years had by then

---

* Hon. Louis H. Pollak, United States District Court for the Eastern District of Pennsylvania, sitting by designation.

elapsed since petitioner's 1976 reentry. This Court's opinion on remand directed the Board to address the "hardship" issue—an issue which (1) had been decided adversely to Ms. Dill by the immigration judge (largely on the ground that the elder Dills were not, within the meaning of the statute, petitioner's "parent[s]," and hence stood outside the circle of close relatives whose "hardship" had statutory significance), and (2) had been praetermitted by the Board. In particular, this Court asked the Board to examine the "hardship" issue "in light of, *inter alia, Antoine-Dorcelli v. INS,* 703 F.2d 19 (1st Cir.1983) and *Tovar v. INS,* 612 F.2d 794 (3d Cir.1980)": in *Antoine-Dorcelli* the alien had lived with an American family, as a member of the household, for thirty years; in *Tovar* the alien was the grandmother and "surrogate mother" of a five-year old American child. *Cf. Zamora-Garcia v. INS,* 737 F.2d 488, 493–94 (5th Cir.1984).

On remand, the Board again declined to suspend Ms. Dill's deportation. The Board's ruling was predicated on two grounds:

First, the Board determined that "[b]y ignoring voluntary departure and by filing frivolous motions and petitions, the [petitioner] has extended her stay in the United States until she has achieved 7 years' physical presence. We consider such an abuse of the system of relief to be a very adverse discretionary factor. The [petitioner] does not have sufficiently weighty favorable equities to overcome this adverse factor . . . . Therefore, we would deny the motion to reopen as a matter of discretion."

Second, the Board considered the "hardship" issue to which this Court had directed its attention. Distinguishing Ms. Dill's situation from that of the minor child whose grandmother was subject to deportation in *Tovar, supra,* the Board found that petitioner "is an adult who can establish her own life and need not depend primarily on her parents for emotional support in the same way as a young child. She has some education, and she has relatives in Bermuda. Like other adult children who live away from home, she should be able to visit her adoptive parents without difficulty . . . . The emotional difficulty of this separation to the [petitioner] or to [Reverend and Mrs. Dill] could not be characterized as extreme, even if the [petitioner] were the natural child of her adoptive parents."

From the Board's reinstatement of its prior adverse ruling, Ms. Dill once again appeals to this Court. Ms. Dill contends that the Board was in error in both of the grounds relied on to deny suspension of deportation. We address those two contentions in turn:

### I.

The Board first determined that Ms. Dill has managed to achieve seven years of continuous presence in the United States "[b]y ignoring voluntary departure and filing frivolous motions and petitions." This, the Board reasoned, constituted "an abuse of the system of relief" from deportation that outweighed Ms. Dill's "favorable equities" and therefore warranted the Board, in the exercise of its discretion, to deny relief.

█ As a general matter, the scope of court of appeals review of the discretionary decisions of an administrative agency such as the Board of Immigration Appeals is very limited. In this instance, however, the Board has expressly keyed its exercise of discretion to its judgment on certain questions of law—namely, its judgment that particular legal positions advanced by counsel for Ms. Dill before the Board and before this Court were "frivolous." On questions of law, administrative judgment is subject to plenary judicial review.

To be sure, it is incumbent upon a court reviewing a Board determination that an alien has advanced "frivolous" contentions in avoidance of deportation to recognize that the Board, acting on behalf of the INS, must be vigilant to insure that the pursuit of administrative and judicial appeals does not become a device "to permit an indefinite stalling of physical departure in the hope of eventually satisfying legal prerequisites." *INS v. Rios-Pineda, su-*

*pra,* —— U.S. at ——, 105 S.Ct. at 2102. But the Board must also be at pains to refrain from labelling as "frivolous" a proposition of law with which the INS disagrees and as to which the INS is vindicated by the courts, unless it can be fairly said that, when the proposition was first advanced by counsel for the alien, counsel should have known that it lay outside the range of respectable professional discourse.[1]

■ In the present case, the Board has characterized as "frivolous" petitioner's claim that her voluntary departure in July of 1976 and readmission one month later did not meaningfully interrupt the period of residence in the United States which commenced in 1975—a claim which, had it been acquiesced in by INS, would have meant that petitioner had achieved seven years of continuous residence in 1982, when she moved for suspension of deportation. It may be acknowledged that an attorney could not have responsibly advanced such a claim subsequent to January 10, 1984, when the Supreme Court decided *INS v. Phinpathya,* 464 U.S. 183, 104 S.Ct. 584. The Court there held that the Immigration and Nationality Act, in precluding suspen-

sion of deportation unless the alien has "been physically present in the United States for a continuous period of not less than seven years," 8 U.S.C. § 1254(a)(1), means exactly that. But, prior to the decision in *Phinpathya,* those courts of appeals that had addressed the statutory language had sought to determine whether an absence from the United States was "meaningfully interruptive" of continuous residence, a concept developed by the Supreme Court in *Rosenberg v. Fleuti,* 374 U.S. 449, 83 S.Ct. 1804, 10 L.Ed.2d 1000 (1963). To be sure, the decided cases prior to *Phinpathya* found voluntary departures from the United States under threat of deportation to be "meaningfully interruptive." *See McColvin v. INS,* 648 F.2d 935 (4th Cir.1981); *Segura-Viachi v. INS,* 538 F.2d 91 (5th Cir.1976) (per curiam); *Barragan-Sanchez v. Rosenberg,* 471 F.2d 758 (9th Cir.1972). *See also Rios-Pineda, supra,* —— U.S. at —— n. 2, 105 S.Ct. at 2102 n. 2. But the fact patterns of those cases generally showed voluntary departures accompanied by an intent to return illegally. *See, e.g., McColvin v. INS,* 648 F.2d 935 (4th Cir.1981); *Barragan-Sanchez v. Rosenberg,* 471 F.2d 758 (9th Cir.1972).[2]

1. *Rios-Pineda, supra,* offers excellent examples of the sorts of arguments which are properly characterized as "frivolous" when raised. The aliens in that case argued, at various times, (1) that they were entitled to suspension of deportation notwithstanding that less than seven years had passed since their first entry into this country, and (2) that a two-month trip abroad under threat of deportation followed by an illegal clandestine reentry was not "meaningfully interruptive" under the standard then commonly applied when measuring the seven-year time period. *See* —— U.S. at ——–——, 105 S.Ct. at 2100–2102. The first of these arguments was squarely contradicted by the statute; the second was one on which "the law ... was clear." *Id.* at —— n. 2, 105 S.Ct. at 2102 n. 2. "[N]either the courts nor the Attorney General had ever considered a departure under threat of deportation, *coupled with a subsequent illegal entry* after two months' absence, anything less than a meaningful interruption of the period." *Id.* (citing cases) (emphasis added). It is worth emphasizing that, by so concluding, the Court expressly undertook to review the finding that the aliens' arguments were frivolous.

The facts in this case stand in stark contrast to the facts before the Court in *Rios-Pineda.* Nei-

ther petitioner's initial entry nor her 1976 reentry was illegal. Indeed, petitioner's 1976 departure appears to have been for the sole purpose of regularizing her status here while her uncle and aunt sought to have her permanently admitted as their "child." Similarly, petitioner appears to·have accepted INS' offer of voluntary departure in January of 1982 in good faith, fully expecting that her application for lawful permanent resident status would soon be approved. Thus, petitioner's presence in this country does not appear to have been marked by the bad faith and pervasive disregard of legal duties which was so evident in *Rios-Pineda.*

2. Of the cases prior to *Phinpathya,* the leading case was *Barragan-Sanchez, supra.* In that case, the Ninth Circuit found that a trip taken under threat of deportation was "meaningfully interruptive" under *Rosenberg v. Fleuti* and therefore stopped the running of the seven-year period for purposes of the suspension provision. 471 F.2d at 760–61. Subsequently, the Ninth Circuit construed *Barragan-Sanchez* as relying not simply on the fact that the alien had departed under threat of deportation, but also on the fact that the alien's departure was for an illegal purpose.

Here, by contrast, the alien left voluntarily with the expectation, in fact realized, of being readmitted six weeks later pursuant to a new student visa. In light of the over-all state of the case law in 1982—and given that no decision of this Court purported to foreclose the position urged by Ms. Dill's counsel—it was not appropriate for the Board to characterize petitioner's 1982 request for suspension of deportation as "frivolous."

The Board has also denominated as "frivolous" petitioner's 1982 attempt to invoke this Court's appellate jurisdiction to review the Board's denial of a stay of deportation pending the Board's disposition of petitioner's appeal from the immigration judge's denial of her motion to reopen her deportation proceeding and to suspend deportation. This Court's recent decision in *Reid v. INS*, 766 F.2d 113 (3d Cir.1985), makes it plain that a court of appeals lacks jurisdiction to review the denial of a stay of deportation. But it is not clear that the contrary position was without any reasonable foundation when petitioner's counsel sought review here in 1982. Two Supreme Court decisions seemed potentially to point in opposite directions. In *Foti v. INS*, 375 U.S. 217, 84 S.Ct. 306, 11 L.Ed.2d 281 (1963), the Supreme Court had held that a court of appeals has jurisdiction to hear the appeal of a denial of suspension of deportation, in part because the order appealed from is functionally equivalent to a deportation order. *See* 375 U.S. at 224, 84 S.Ct. at 311; 8 U.S.C. § 1105a(a) (providing that courts of appeals have jurisdiction to review "final orders of deportation"). Five years later, in *Cheng Fan Kwok v. INS*, 392 U.S. 206, 88 S.Ct. 1970, 20 L.Ed.2d 1037 (1968), the

Court had held that a court of appeals has no jurisdiction to review an INS district director's denial of a stay of deportation in an adjustment of status proceeding, on the ground that the relevant jurisdictional provision "embrace[s] only those determinations made during a proceeding conducted under § 242(b) [of the Act], including those determinations made incident to a motion to reopen such proceedings." 392 U.S. at 216, 88 S.Ct. at 1976 (quoted in *Reid v. INS, supra,* at 115). *Cheng Fan Kwok* did not purport to disturb *Foti,* and hence did not address the question whether a denial of a stay of deportation in a deportation proceeding—the relevant event in Ms. Dill's case—was to be treated differently from a denial of suspension of deportation for purposes of court of appeals jurisdiction to review.[3]

In *Newton v. INS*, 622 F.2d 1193 (3d Cir.1980), this Court held that it was without jurisdiction to hear the appeal of an alien who had already been deported when the appeal was filed. Thus, in light of *Newton,* petitioner could plausibly argue that the denial of her request for a stay was functionally equivalent to a final order of deportation and was consequently appealable under *Foti.* Given that petitioner's suspension claim had not, at the time she appealed the denial of her request for a stay, been reviewed either administratively or by the courts, this argument had substantial force. To be sure, there was contrary authority, albeit in another Circuit, at the time petitioner advanced her jurisdictional argument. *See Reyes v. INS*, 571 F.2d 505 (9th Cir.1978).[4] But it can fairly be said that the question was one which

---

*See Kamheangpatiyooth v. INS,* 597 F.2d 1253, 1257–58 & n. 8 (9th Cir.1979).

**3.** As Judge Becker has recently noted in addressing this precise issue, a footnote in the *Cheng Fan Kwok* decision "suggested" that the denial of a stay would not be considered a "final order" of deportation. *Reid, supra,* at 115 (quoting *Cheng Fan Kwok, supra,* 392 U.S. at 212 n. 11, 88 S.Ct. at 1974 n.11). *Cheng Fan Kwok* nevertheless rested its decision on the fact that the denial of a stay had not taken place in a "deportation proceeding." 392 U.S. at 212–18, 88 S.Ct. at 1974–77. *Foti's* authority was left

undisturbed. *See id.* at 210–11, 88 S.Ct. at 1973–74.

**4.** Other courts of appeals have since joined the Ninth Circuit in the conclusion that the denial of a stay is not a reviewable "final order of deportation." *Reid, supra; Bonilla v. INS,* 711 F.2d 43 (5th Cir.1983) (per curiam); *Diaz-Salazar v. INS,* 700 F.2d 1156 (7th Cir.1983). None of these decisions had been rendered at the time when petitioner advanced her jurisdictional argument.

was still open to reasonable argument. *Cf. Reid, supra,* at 116–17 n. 9 (noting seriousness of alien's contention that, if judicial reviews of denials of stays were unavailable, aliens would often be unable to obtain review of the *merits* of their petitions for discretionary relief from deportation). That being the case, it was no abuse of the immigration laws for petitioner to raise the issue.

## II.

 Next we address the Board's conclusion that petitioner Dill has not demonstrated that separation from her aunt and uncle would constitute "extreme hardship" either for herself or for Reverend and Mrs. Dill. The Board recognized that Reverend and Mrs. Dill are petitioner's *de facto* parents, but found that, since petitioner is an adult, "[t]he emotional difficulty of this separation to [Ms. Dill] or to [Reverend and Mrs. Dill] could not be characterized as extreme, even if [Ms. Dill] were the natural child of her adoptive parents." Abstractly one cannot quarrel with this determination. Had we plenary authority to review the Board's decision, we might press the question whether the Board has not put more weight than is appropriate on petitioner's "relatives in Bermuda" as a cushion for the hardship she will suffer, given that the only Bermuda relatives identified in the record are petitioner's natural parents with whom it does not appear that she has any continuing connection. But our authority to review this phase of the Board's decision is not plenary. *INS v. Jong Ha Wang,* 450 U.S. 139, 143–45, 101 S.Ct. 1027, 1030–32, 67 L.Ed.2d 123 (1981). We cannot set aside the Board's finding that Ms. Dill has not demonstrated "extreme hardship" unless that finding can be deemed irrational or without substantial evidentiary support. *See Amezquita-Soto v. INS,* 708 F.2d 898, 902–03 (3d Cir.1983). The Board's determination of the "hardship" issue cannot properly be so characterized.

### Conclusion

Since we have concluded that the Board's rejection of Ms. Dill's hardship claim was not irrational or lacking in substantial evidentiary support, and since that determination by the Board was an adequate ground for its decision, the Board's decision is affirmed.

ADAMS, Circuit Judge, concurring.

I concur in Judge Pollak's opinion for the reasons he stated in section II. Because I believe that that section presents a completely adequate ground for the judgment reached today, I do not consider it appropriate to address the issues set forth in section I.