894 F.2d 640
 58 USLW 2492, 14 O.S.H. Cas.(BNA) 1409,
1990 O.S.H.D. (CCH) P 28,809
 Elizabeth DOLE, Secretary of Labor, United States Department
of Labor, Petitioner,
v.
EAST PENN MANUFACTURING CO., INC. and Occupational Safety
and Health Review Commission, Respondents.
 No. 89-3426.
 United States Court of Appeals,
Third Circuit.
 Argued Dec. 12, 1989.
Decided Jan. 29, 1990.
 
 Robert P. Davis, Sol. of Labor, Cynthia L. Attwood, Associate Sol. for Occupational Safety and Health, Ann Rosenthal, Arlington, Va., for Appellate Litigation.
 Barbara E. Kahl (argued), U.S. Dept. of Labor, Washington, D.C., for petitioner.
 Dennis J. Morikawa, Morgan, Lewis & Bockius, Philadelphia, Pa., Vincent Candiello (argued), Harrisburg, Pa., for respondent East Penn Mfg., Inc.
 Before HUTCHINSON, COWEN and ROSENN, Circuit Judges.
 OPINION OF THE COURT
 HUTCHINSON, Circuit Judge.
 
 
 1
 The Secretary of Labor (Secretary) petitions this Court for review of a decision of the Occupational Safety and Health Review Commission (Commission) vacating a citation against the East Penn Manufacturing Company (East Penn). The Secretary issued the citation against East Penn after the company discontinued paying overtime benefits to an employee removed for possible exposure to excessive lead levels, as required by the lead standard promulgated by the Secretary and the Occupational Safety and Health Administration (OSHA). The Secretary asserted that East Penn had to include overtime pay as part of the medical removal protection benefits given to the employee in connection with the transfer, because the employee had regularly received overtime pay before the transfer.
 
 
 2
 The Commission agreed with the Secretary that overtime pay is part of the medical removal protection benefits that must be given to employees transferred by employers pursuant to the lead standard. Nevertheless, it vacated the citation against East Penn because it concluded that East Penn had acted in reasonable reliance on its prior decision in Secretary of Labor v. Amax Lead Co., 12 O.S.H. Cas. (BNA) 1878, 1986 O.S.H. Dec. (CCH) p 27,629 (1986). In Amax Lead, the Commission had held that overtime pay benefits did not have to be given to employees transferred for possible exposure to excessive lead levels.
 
 
 3
 The Commission's decision not to apply its interpretation of the medical removal protection benefits that must be paid to employees transferred pursuant to the lead standard to the case at hand is contrary to the principles that govern retroactive application of the rationale of judicial and quasi-judicial decisions. It was not reasonable for East Penn to rely on the Commission's earlier Amax Lead decision in changing its policy on medical removal protection benefits in the face of the Secretary's consistent position that they are due, especially when Amax Lead remained on direct review to a court of appeal and there was a significant question about the decision's validity. Moreover, the Secretary's citation does not impose a fine or otherwise punish East Penn for relying on Amax Lead. It merely requires East Penn to give its employee what was due when the employee was transferred for possible exposure to excessive lead levels. Accordingly, we will reverse the Commission's decision and reinstate and affirm the Secretary's citation against East Penn. We also will order abatement of the citation by directing East Penn to pay the overtime benefits it owes the employee, plus interest.
 
 I.
 
 4
 The facts in this case are essentially undisputed. The Secretary has authority under the Occupational Safety and Health Act of 1970 (Act), 29 U.S.C.A. Secs. 651-678 (West 1985), to promulgate and modify occupational safety or health standards and to issue citations to an employer she believes is in violation of any standard, rule, regulation, or order promulgated by her. See 29 U.S.C.A. Secs. 655(b), 658. OSHA, acting on behalf of the Secretary,[1] promulgated a lead standard to protect employees at their workplace. See 29 C.F.R. Sec. 1910.1025 (1989); United Steelworkers v. Marshall, 647 F.2d 1189 (D.C.Cir.1980) (court upheld the lead standard in most respects, concluded that the rulemaking process was procedurally proper and that the provision on medical removal protection benefits was a reasonable exercise of OSHA's statutory power), cert. denied, 453 U.S. 913, 101 S.Ct. 3149, 69 L.Ed.2d 997 (1981).
 
 
 5
 The lead standard includes a requirement that employers provide medical removal protection benefits to employees removed from their jobs because of excessive lead levels, even when the employer voluntarily initiates the removal and it takes place only because of a threat of exposure to excessive lead levels. 29 C.F.R. Secs. 1910.1025(k)(2)(i), (k)(2)(vii).[2] Under the Secretary's lead standard, the employer must "maintain the earnings, seniority and other employment rights and benefits of an employee as though the employee had not been removed from normal exposure to lead or otherwise limited." Id. Sec. 1910.1025(k)(2)(ii). An appendix to the lead standard, published within a year after the standard had been promulgated, explained that the earnings protected by Sec. 1910.1025(k)(2) includes "more than just your base wage; it includes overtime, shift differentials, incentives, and other compensation [the employee] would have earned if [he] had not been removed." Id. Sec. 1910.1025 app. B, Sec. IX. Citations issued by the Secretary have been consistent with this interpretation of the medical removal protection benefits provision in Sec. 1910.1025(k)(2).
 
 
 6
 East Penn manufactures batteries in Pennsylvania. In July 1986, it placed an employee, Carol Reimert (Reimert), on medical removal and reassigned her to a job where she would be exposed to lower lead levels. Prior to her transfer, the employee had regularly earned overtime pay. Initially, East Penn included overtime pay as part of the medical removal protection benefits it gave to Reimert as part of her transfer, but it changed its policy after learning of the Commission's decision in Amax Lead. East Penn's revised policy stated that "employees [receiving medical removal protection benefits] need not be provided with incentive or overtime payments that were associated with their previous positions, but need only be given the base rate of the job from which the employee was removed." Appendix (App.) at A.21. As a result of this policy change, Reimert lost $1,150.85 in overtime earnings.
 
 
 7
 On March 18, 1987, the Secretary, through OSHA, issued a citation against East Penn. The citation claimed that East Penn was in violation of 29 C.F.R. Sec. 1910.1025(k)(2) by failing to provide appropriate medical removal protection benefits to the employee. Since the employee had been regularly paid overtime before East Penn transferred her pursuant to the lead standard, the citation asserted that she must be paid overtime benefits. East Penn promptly contested the citation, and the Secretary thereafter filed a complaint with the Commission.[3]
 
 
 8
 East Penn argued that the complaint should be dismissed and the citation vacated since the exclusion of overtime pay from the benefits it gave to the employee was consistent with the Commission's interpretation of Sec. 1910.1025(k)(2) in Amax Lead. On September 9, 1987, the administrative law judge assigned to hear the complaint agreed with East Penn and granted its motion to dismiss. Secretary of Labor v. East Penn Mfg. Co., OSHRC No. 87-537 (ALJ Sept. 9, 1987), reprinted in App. at A.23. The Secretary petitioned the Commission for review.
 
 
 9
 On October 9, 1987, after the United States Court of Appeals for the Fifth Circuit had overruled the Commission's Amax Lead decision on the Secretary's petition for review in United Steelworkers v. Schuylkill Metals Corp., 828 F.2d 314 (5th Cir.1987), the Commission granted the Secretary's petition for discretionary review in East Penn's case.[4] Before the Commission decided the East Penn case, the United States Court of Appeals for the Ninth Circuit issued McLaughlin v. ASARCO, Inc., 841 F.2d 1006 (9th Cir.1988), a decision that also rejected the Commission's reasoning in Amax Lead.
 
 
 10
 On April 27, 1989, the Commission handed down its decision in this case. See Secretary of Labor v. East Penn Mfg. Co., OSHRC No. 87-537 (Apr. 27, 1989), reprinted in App. at A.31. The Commission overruled its prior decision in Amax Lead and held that overtime pay fell within the meaning of medical removal protection benefits provided by Sec. 1910.1025(k)(2) and had to be paid when an employee is transferred for possible exposure to excessive lead levels. However, since East Penn's alleged violation had occurred before the Schuylkill Metals case was announced and East Penn had "acted in reasonable reliance" on the Amax Lead decision in formulating its policy, the Commission also held that the pending citation against East Penn should be vacated. The Secretary then petitioned this Court for review.
 
 II.
 
 11
 We have jurisdiction over the Secretary's petition for review of a final decision by the Commission pursuant to Sec. 11(b) of the Occupational Safety and Health Act of 1970, 29 U.S.C.A. Sec. 660(b) (West 1985). Venue is proper since the alleged violation occurred in Pennsylvania. Id.
 
 
 12
 We review the Commission's decision not to apply its own interpretation of the medical removal protection benefits provision to the case at hand according to the relevant standard in the Administrative Procedure Act, 5 U.S.C.A. Sec. 706(2)(A) (West 1977). Donovan v. Adams Steel Erection, Inc., 766 F.2d 804, 807 (3d Cir.1985); Budd Co. v. Occupational Safety & Health Rev. Comm'n, 513 F.2d 201, 204 (3d Cir.1975). That section provides that "[t]o the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, [and] interpret constitutional and statutory provisions.... The reviewing court shall--(2) hold unlawful and set aside agency action, findings, and conclusions found to be--(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C.A. Sec. 706(2)(A). Issues of law are subject to plenary review. Dill v. INS, 773 F.2d 25, 28 (3d Cir.1985).[5]
 
 III.
 
 13
 We begin by recognizing that it is now undisputed that overtime pay is part of an employee's "earnings" for purposes of Sec. 1910.1025(k)(2)(ii) and must be included as part of the medical removal protection benefits given to an employee transferred for possible exposure to excessive lead levels. Both Chairman Buckley's decision for the Commission and Commissioner Arey's separate concurrence in East Penn's case made this clear.[6]
 
 
 14
 Chairman Buckley, recognizing the need for predictability and uniformity in interpreting Sec. 1910.1025(k)(2), acquiesced in the reasoning of the Fifth and Ninth Circuits in the Schuylkill Metals and ASARCO decisions and held that overtime pay must be included as part of the medical removal protection benefits given to employees transferred due to excessive exposure to lead. His decision for the Commission held: "I agree to overrule Amax and henceforth apply the [medical removal protection] standard in accordance with the two Courts' interpretation. Henceforth, employers including East Penn must comply with that interpretation." App. at A.37.
 
 
 15
 Commissioner Arey's concurrence made clear her opinion that the Commission's decision in Amax Lead was incorrect. She wrote:
 
 
 16
 In my opinion, the Commission wrongly decided Amax, and I therefore concur in overruling that decision. The language of the medical removal protection standard, read in light of the standard's purpose and its legislative history, requires employers to assure that employees removed from lead exposure for medical reasons suffer no economic loss. Therefore, East Penn's failure to pay its employee for overtime she would have earned if she had not been medically removed from lead exposure was inconsistent with the standard's requirement that employers "maintain the earnings ... of an employee as though the employee had not been removed from normal exposure to lead or otherwise limited."
 
 
 17
 Id. at A.40 (footnotes omitted).
 
 
 18
 Commissioner Arey went through an analysis of the medical removal protection provisions similar to the analyses performed in Schuylkill Metals and ASARCO. Specifically, she considered the relevant language of Sec. 1910.1025, the Secretary's intent in promulgating the regulation, other relevant legislative history, and the policy implications of alternate interpretations. See id. at A.41-A.46. This analysis led her to conclude that overtime pay must be included as part of the benefits given to employees transferred for exposure to excessive lead levels. Commissioner Arey's analysis and conclusion on this issue are convincing, especially when considered in connection with the similar analyses of the Fifth and Ninth Circuits leading to similar conclusions in Schuylkill Metals and ASARCO. See Schuylkill Metals, 828 F.2d at 320-23; ASARCO, 841 F.2d at 1007-09.[7]
 
 
 19
 Despite holding that overtime pay should be included in the medical removal protection benefits provided to employees transferred pursuant to the lead standard, the Commission concluded that the citation against East Penn should be vacated since it had "acted in reasonable reliance" on the now-discredited Amax Lead decision. App. at A.33. Both Chairman Buckley and Commissioner Arey believed that it would be "fundamentally unfair" to cite East Penn with a violation in this situation, where the alleged violation occurred before the Fifth Circuit announced its decision in Schuylkill Metals and East Penn had changed its policy specifically on the basis of the Commission's "authoritative" interpretation in Amax Lead. Id. at A.38, A.40. The Commission determined that East Penn was entitled to "fair notice" before being cited for violating the lead standard by not including overtime pay as part of the benefits given to transferred employees. Id. Commissioner Arey even concluded that she could see no remedial purpose in upholding the citation against East Penn. Id. at A.47 n. 7. We must decide whether the Commission erred in vacating the Secretary's citation against East Penn by refusing to apply its interpretation of Sec. 1910.1025(k)(2) to the facts of this case.
 
 
 20
 General principles of retroactivity applicable to judicial and quasi-judicial bodies like the Commission normally would require the Commission to apply its decision on the proper interpretation of the medical removal protection provisions to East Penn itself.[8] In Chevron Oil Co. v. Huson, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), the Supreme Court discussed three factors that are usually considered when deciding whether a judicial decision in a civil case should be given only prospective effect.
 
 
 21
 In our cases dealing with the nonretroactivity question, we have generally considered three separate factors. First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed. Second, it has been stressed that "we must ... weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." Finally, we have weighed the inequity imposed by retroactive application, for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity."
 
 
 22
 404 U.S. at 106-07, 92 S.Ct. at 355-56 (citations omitted). See also Hill v. Equitable Trust Co., 851 F.2d 691, 696 (3d Cir.1988) (pointing out that this Circuit has applied the Chevron Oil factors to retroactivity questions in civil cases), cert. denied, --- U.S. ----, 109 S.Ct. 791, 102 L.Ed.2d 782 (1989).
 
 
 23
 After considering these factors, we see no convincing reason for deviating from the traditional rule of giving judicial-like decisions retroactive effect.[9] The Commission's concern about East Penn's "reasonable reliance" on its decision in Amax Lead was misplaced in this situation. As a precedent, its rationale was not clearly established and East Penn knew that the decision could be overturned on review by the Fifth Circuit, as it eventually was. Moreover, the Secretary had consistently interpreted the provisions on medical removal protection benefits to include overtime pay and the language and legislative history of Sec. 1910.1025 supported this interpretation, so it should have been no surprise to East Penn when the Fifth Circuit reversed the Commission's Amax Lead decision on direct review in Schuylkill Metals.
 
 
 24
 East Penn's suggestion that it is "fundamentally unfair" to make it pay the overtime benefits it owes to its employee when it changed its policy on medical removal solely in reliance on the "authoritative" Commission decision in Amax Lead lacks merit. East Penn was on notice that a petition for review had been filed in the Fifth Circuit in the Amax Lead case and certainly knew that the decision could be reversed by that court. The Amax Lead decision itself was plainly at odds with the Secretary's position on the inclusion of overtime in medical removal protection benefits. East Penn cannot immunize itself against paying only what it owes under the lead standard by relying on the Commission's decision when the review process in that case had not yet been completed. The Secretary was under no obligation to obtain a stay in the Amax Lead case to keep employers from relying on it while it was on direct review. See NLRB v. Sav-On Drugs, Inc., 728 F.2d 1254, 1256 (9th Cir.1984) (en banc) (absence of a stay does not vary the rule a party acts at its own peril if it proceeds before direct review is completed).[10]
 
 
 25
 Moreover, it is more equitable to apply the Commission's interpretation on overtime pay to East Penn than to only apply it prospectively. The Commission's prospective decision thwarts the regulation's purpose, at least in this case, and unjustly enriches East Penn. East Penn suffered no detriment in improperly relying on the Amax Lead decision; in fact it benefited by not having to pay overtime benefits to the employee while the Secretary's action was pending. The Secretary's citation does not seek to impose a fine or otherwise punish East Penn for relying on Amax Lead. Consequently, there is no inequity in requiring East Penn to pay the overtime benefits that will make its employee, Reimert, whole within the framework of the lead standard's medical removal protection provisions as the Commission now construes it.
 
 
 26
 Our holding that the Commission erred in its decision by not applying its interpretation of the medical removal protection provisions to East Penn is not changed by cases dealing with retroactivity in the administrative context. East Penn argues that our decision in E.L. Wiegand Div. v. NLRB, 650 F.2d 463 (3d Cir.1981), cert. denied, 455 U.S. 939, 102 S.Ct. 1429, 71 L.Ed.2d 649 (1982), gives an administrative agency like the Commission more leeway than courts in deciding whether to give its decisions retroactive effect. E.L. Wiegand 's relevance to this situation seems questionable given the significant administrative differences between the National Labor Relations Board (Board) and the Commission,[11] but even if this case is material, we do not read it as allowing the Commission to refuse to give retroactive effect to its decision here.
 
 
 27
 A footnote in E.L. Wiegand cited the D.C. Circuit's test on retroactivity in Board decisions with approval:
 
 
 28
 In Retail, Wholesale and Department Store Union v. NLRB, 466 F.2d 380, 390 (D.C.Cir.1972), the court enumerated the following factors to be considered in resolving the problem of retroactive application of a Board holding: (1) whether the particular case is one of first impression, (2) whether the new rule represents an abrupt departure from well established practice or merely occupies a void in an unsettled area of law, (3) the extent to which the party against whom the new holding is applied in fact relied on the former rule, (4) the degree of the burden imposed, and (5) the statutory interest in application of this new rule.
 
 
 29
 650 F.2d at 471 n. 5. As we have noted, there is no substantive difference between the Chevron Oil factors and those in the E.L. Wiegand footnote. See International Ass'n of Bridge, Structural & Ornamental Ironworkers, Local 3 v. NLRB, 843 F.2d 770, 780 n. 12 (3d Cir.), cert. denied, --- U.S. ----, 109 S.Ct. 222, 102 L.Ed.2d 213 (1988) ("Deklewa"). Under both the factors enumerated in the E.L. Wiegand footnote and those discussed in Chevron Oil, the Commission was not justified in declining to apply its decision on the proper interpretation of the medical removal protection provisions to East Penn in the case at hand.
 
 IV.
 
 30
 For the foregoing reasons, we will reverse the Commission's decision to vacate the Secretary's citation against East Penn. We will reinstate the citation and affirm it. Since the amount of overtime benefits in issue is undisputed, we also will order East Penn to abate the violation by paying the overtime benefits it owes its employee, plus interest.
 
 
 31
 Costs shall be taxed against respondent East Penn.
 
 
 
 [1]
 The Secretary has responsibility for a wide variety of executive, legislative, and administrative functions under the Act. She has assigned responsibility for promulgating standards under Sec. 655(b) to the Assistant Secretary of Labor for Occupational Safety and Health, who heads OSHA. See United Steelworkers v. Marshall, 647 F.2d 1189, 1202 n. 1 (D.C.Cir.1980), cert. denied, 453 U.S. 913, 101 S.Ct. 3149, 69 L.Ed.2d 997 (1981)
 
 
 [2]
 29 C.F.R. Sec. 1910.1025(k)(2)(i) provides:
 The employer shall provide to an employee up to eighteen (18) months of medical removal protection benefits on each occasion that an employee is removed from exposure to lead or otherwise limited pursuant to this section.
 Section 1910.1025(k)(2)(vii) provides:
 Where an employer, although not required by this section to do so, removes an employee from exposure to lead or otherwise places limitations on an employee due to the effects of lead exposure on the employee's medical condition, the employer shall provide medical removal protection benefits to the employee equal to that required by paragraph (k)(2)(i) of this section.
 
 
 [3]
 The Commission is a quasi-judicial body for those wishing to contest citations issued by the Secretary. It is independent from the Department of Labor. See 29 U.S.C.A. Secs. 659(c), 661; Marshall v. Sun Petroleum Prods. Co., 622 F.2d 1176, 1183-84 (3d Cir.) (Commission is strictly an independent adjudicatory body, with no rulemaking authority and no direct policy role in administering the Act), cert. denied, 449 U.S. 1061, 101 S.Ct. 784, 66 L.Ed.2d 604 (1980). When an employer contests a citation, a hearing is initially held by an administrative law judge of the Commission. His decision is final thirty days after its submission, unless the Commission directs review before this time. See 29 U.S.C.A. Sec. 661(j)
 
 
 [4]
 The United States Court of Appeals for the Fifth Circuit remanded the consolidated Schuylkill Metals case to the Commission. The Commission then issued three separate decisions affirming the Secretary's citations and assessing penalties against the employers for violations of the lead standard's medical removal protection provisions, but it did not order the employers to pay the removed employees the specific benefits that were due. See Secretary of Labor v. St. Joe Resources Co., 13 O.S.H. Cas. (BNA) 2193, 1989 O.S.H. Dec. (CCH) p 28,519 (1989); Secretary of Labor v. Schuylkill Metals Corp., 13 O.S.H. Cas. (BNA) 2174, 1989 O.S.H. Dec. (CCH) p 28,520 (1989); Secretary of Labor v. Amax Lead Co., 13 O.S.H. Cas. (BNA) 2169, 1989 O.S.H. Dec. (CCH) p 28,518 (1989). Petitions for review in these three cases are now pending in the Fifth and D.C. Circuits. In the case before us, the Secretary does not seek any fines or penalties but asks only for payment of the overtime due, plus appropriate interest
 
 
 [5]
 East Penn argues that we have a different standard of review. Citing International Ass'n of Bridge, Structural & Ornamental Ironworkers, Local 3 v. NLRB, 843 F.2d 770, 780 (3d Cir.), cert. denied, --- U.S. ----, 109 S.Ct. 222, 102 L.Ed.2d 213 (1988) ("Deklewa"), it suggests that we should defer to an administrative decision on retroactivity "absent some manifest injustice." Brief for Respondent at 11. However, the Deklewa example is inapposite here. In Deklewa, the NLRB decided to apply its new interpretation to the case at hand. Moreover, the NLRB is a different type of administrative body than the Commission. The NLRB has wide-ranging rulemaking and policy-setting powers that the Commission lacks. Thus, the NLRB has more discretion to decide whether its new interpretation should be applied prospectively or retroactively. Since the Commission is strictly a quasi-judicial body, we must scrutinize its decision not to apply its interpretation of the medical removal protection provisions to the case at hand under the standard of Sec. 706(2)(A)
 
 
 [6]
 The Commission normally is composed of three members, but at the time of its decision in this case, there were only two members. The parties have informed us at oral argument that no one is currently serving on the Commission
 
 
 [7]
 It is interesting to note that the Fifth and Ninth Circuits came to similar conclusions about the proper interpretation of Sec. 1910.1025's provisions on medical removal protection benefits even though the Fifth Circuit defers to the Secretary's interpretation of a regulation she promulgated, while the Ninth Circuit normally shows deference to the Commission's interpretation. Compare Schuylkill Metals, 828 F.2d at 319 with ASARCO, 841 F.2d at 1010. After examining the issue, the Ninth Circuit concluded that including overtime pay as part of these benefits was the only interpretation consistent with "the plain meaning of the regulation itself," despite the Commission's contrary conclusion in Amax Lead. ASARCO, 841 F.2d at 1010
 
 
 [8]
 If the Commission had adhered to Amax Lead 's interpretation of the provisions on medical removal protection benefits in reviewing the Secretary's citation against East Penn and, consistent with the analysis in Schuylkill Metals and ASARCO, we had independently determined on review that the Commission's interpretation was incorrect, there is little doubt that we would have found East Penn to be in violation of Sec. 1910.1025(k)(2) and reinstated and affirmed the citation against East Penn. It is difficult to see why the outcome should be different when the Commission itself decides that its interpretation of the medical removal protection provisions is improper or incorrect, even if the Commission believes that its decision should be applied only prospectively. If the Secretary prevails in an action against an employer, a quasi-judicial body like the Commission generally is obliged to require the employer to accept the consequences of that decision in the specific case at hand and not simply to comply with it in the future. See Hill v. Equitable Trust Co., 851 F.2d 691, 696 (3d Cir.1988) (" '[T]he announcement that "the rule adopted today is to be effective only from this date forward" [is] inconsistent with the basic symbolic view of the judicial process.' ") (quoting Mishkin, The Supreme Court 1964 Term, Forward: The High Court, The Great Writ, and The Due Process of Time and Law, 79 Harv.L.Rev. 56, 65 (1965), reprinted in R. Aldisert, The Judicial Process 905 (1976)), cert. denied, --- U.S. ----, 109 S.Ct. 791, 102 L.Ed.2d 782 (1989)
 
 
 [9]
 The traditional rule is usually thought to have had its genesis in United States v. The Schooner Peggy, 5 U.S. (1 Cranch) 103, 110, 2 L.Ed. 49 (1801). See Hill, 851 F.2d at 695 (case is to be decided on the law as it exists at the time of decision, although that law may differ from law in effect when events creating the controversy occurred) (citing The Schooner Peggy ). See also Hill, 851 F.2d at 695, 696 (a judicial-like decision "by its nature acts retroactively," since "prospective lawmaking is a traditionally legislative function and retroactive legal interpretation is historically a judicial task")
 
 
 [10]
 Our conclusion does not give the Secretary undue authority with respect to the Commission nor undermine the Commission's authority by discouraging employers from relying on decisions issued by the Commission when the Secretary disagrees with the decision. It simply recognizes and maintains the independent authority that both the Secretary and the Commission have in this administrative scheme
 
 
 [11]
 We consider much of the language of the E.L. Wiegand decision cited by East Penn to be inapplicable here, since there are significant differences between the Board involved in that case and the Commission involved here. The Board has wide-ranging rulemaking and policy-setting powers that are lacking in the Commission. See note 5, supra. Thus, the question we are presented with is not whether an administrative body with policymaking powers can decide to apply a new or changed interpretation of a particular regulation retroactively, as in E.L. Wiegand. See 650 F.2d at 471-72. Instead, we must determine whether a quasi-judicial body, once it has decided that a particular interpretation of a regulation promulgated by another administrative body is proper, can decide not to apply that interpretation to the case at hand when the factors enumerated in Chevron Oil and E.L. Wiegand suggest that there is no convincing reason to apply the decision only prospectively